United States Court of Appeals,

Eleventh Circuit.

No. 94-4769.

Paul ISENBERGH, Plaintiff-Appellant,

v.

KNIGHT-RIDDER NEWSPAPER SALES, INC., n.k.a. Newspapers First, Inc., Knight-Ridder, Inc., Defendants-Appellees.

Sept. 19, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-1596-CIV-UUB), Jacob Mishler, District Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and ENGEL[*], Senior Circuit Judge.

PER CURIAM:

We withdraw altogether our earlier opinion dated June 11, 1996, and published at 84 F.3d 1380. Our decision for the case remains the same. We think today's opinion may in some ways better explain our thoughts, however.

Plaintiff Paul Isenbergh appeals the district court's grant of judgment as a matter of law for defendant Knight-Ridder Newspaper Sales, Inc. ("KRNS"), n/k/a Newspapers First, Inc. ("Newspapers First"), in Isenbergh's suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Isenbergh claims that Newspapers First discriminated against him because of his age in selecting the manager for the company's Miami sales office. After trial, a jury returned a verdict in favor of Isenbergh and awarded him $250,000 in damages. Newspapers First renewed its

[*]Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure; the district court granted the motion. Because we agree that Isenbergh did not produce evidence from which the jury could reasonably infer intentional discrimination based on age, we affirm.

I.

In 1990, KRNS merged with Million Market Newspapers/Times Mirror National Marketing, Inc. ("MMTM") to form Newspapers First. At the time of the merger, Isenbergh, sixty years old, was the manager of KRNS's Miami sales office. Larry Malloy, forty-four years old, was the manager of MMTM's Miami sales office. Both were candidates, along with eight other KRNS and MMTM managers from around the country, for the new position of manager of Newspapers First's Miami sales office. To select the new manager, King Anthony, the former president of MMTM and current president of Newspapers First, and John Kosanke, the former president of KRNS and current executive vice-president of Newspapers First, interviewed the ten candidates. The only real competition for the new position, however, was apparently between Isenbergh and Malloy, because Newspapers First did not want to move a manager from another part of the country to Miami. In conjunction with the interviews, Anthony and Kosanke used an "alternation ranking system" to rate the candidates. KRNS had never used this system before to make personnel decisions. Under the system, each candidate received two ordinal rankings: one based on past management performance and one based on the interview. The two rankings were averaged to obtain each candidate's overall score.

When the nine candidates who had worked at KRNS or MMTM for more than six months were ranked according to this system, Isenbergh finished eighth. Malloy finished second. Three managers over age fifty—including one who was sixty-three years old—finished higher than Isenbergh. Malloy got the job, and Isenbergh was offered the chance to interview for a sales position in Miami. He chose to take early retirement instead.

Isenbergh testified that the atmosphere at his interview was "cold" and that Anthony was on the phone most of the time. His interview allegedly lasted only a half-hour, whereas Malloy's was a full hour, as all of the interviews were planned to be. Newspapers First presented evidence challenging Isenbergh's version of what happened at the interview.

Isenbergh worked for KRNS from the late 1960s until 1990, mostly as a salesman. He became a vice-president in 1984. In 1986, he won the praise of Kosanke by selling an advertising package to Walt Disney World. Isenbergh's competitors for the account included a newspaper whose sales were handled by Malloy. The parties dispute the significance of this transaction. Isenbergh characterizes it as evidence of his good job performance in the past and of his superior qualification, relative to Malloy, for the managerial job. Newspapers First deems it to be irrelevant, because it involved sales, not management, and because Isenbergh's newspaper was able to offer Walt Disney World a lower advertising rate than was Malloy's newspaper.

There is conflicting evidence about how Isenbergh was viewed within the company and about his qualifications as a manager.

Isenbergh points to his annual pay raises and management-by-objective bonuses that were approved by Kosanke, as well as to the lack of a paper trail of criticism, as evidence of his perceived competence. He further points to testimony by Kosanke that Isenbergh was a "seasoned manager" and a "satisfactory manager." Kosanke also testified, however, that Isenbergh was a "lone ranger" and was not a "team player." Isenbergh argues that his experience running newspaper offices of up to five people and commanding a department of about sixty men while he was in the Navy qualified him as a manager. Newspapers First counters that Isenbergh's job at KRNS entailed little management and that for the management Isenbergh did do, he was criticized by Kosanke. It stresses Malloy's extensive management experience and argues that he was better suited for the new job than Isenbergh.

## II.

### A.

We review de novo the district court's grant of judgment as a matter of law. *Daniel v. City of Tampa,* 38 F.3d 546, 549 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995). In other words, we apply the same standard as that applied by the district court. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). In considering a motion for judgment as a matter of law, a court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* The motion should be granted only if upon such consideration, the court finds that reasonable people in the exercise of impartial judgment could not

arrive at a contrary verdict. *Id.* The court may not weigh the evidence or decide the credibility of witnesses. *Watts v. Great Atl. & Pac. Tea Co.,* 842 F.2d 307, 310 (11th Cir.1988) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc)). The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; "there must be a substantial conflict in evidence to support a jury question." *Carter,* 870 F.2d at 581.

We look first to see whether Isenbergh has presented a prima facie case of discrimination. A plaintiff alleging age discrimination under the ADEA may choose one of three ways to establish a prima facie case: (1) direct evidence of discriminatory intent; (2) statistical proof of disparate treatment; or (3) meeting a test such as that set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Plaintiff's burden in proving a prima facie case is light. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 949 (11th Cir.1991).

In *McDonnell Douglas,* the Supreme Court articulated the four elements a plaintiff must show in order to establish a prima facie case of employment discrimination:

> (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The Supreme Court intended this framework to be flexible, *see id.* at 802 n. 13,

93 S.Ct. at 1824 n. 13, rather than "mechanized, or ritualistic," *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). This court has enunciated various reformulations of the *McDonnell Douglas* test. For example, in *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990), we set forth a slightly different variation of the *McDonnell Douglas* test in an ADEA case involving a "reduction in force." The plaintiff had to show

> (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.

*Earley,* 907 F.2d at 1082.

The district court treated this case as a "failure to hire" case, as opposed to a "reduction in force" case. Although, as discussed above, case law suggests that the standard for establishing a prima facie case depends on whether the case concerns a reduction in force as opposed to a termination or a failure to hire, *compare Earley,* 907 F.2d at 1082 (listing prima facie case criteria for reduction-in-force cases), *with Carter,* 870 F.2d at 582 (listing prima facie case criteria for termination and failure-to-hire cases), the instant appeal demonstrates why, as we noted in *Pace v. Southern Railway System,* 701 F.2d 1383 (11th Cir.1983), employment discrimination cases are not easily categorized and why any prima facie case test must be flexible. In

a sense, the position of manager of Newspapers First's Miami office was a new job as a result of the merger of KRNS and MMTM, and Isenbergh's and Malloy's previous positions disappeared. From this viewpoint, the case is one of a failure to hire. Because the candidates considered for this "new" position, however, were all from within the two merging companies, the situation was not the same as in a standard failure-to-hire case. In essence, because of the merger, there was a reduction in force from two Miami managers to one. In deciding whether Isenbergh has established a prima facie case, we need not crudely categorize the facts as involving either a failure to hire or a reduction in force. Instead, we examine the facts of the case and decide "whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Pace,* 701 F.2d at 1387.

We conclude that Isenbergh presented a prima facie case. Isenbergh was in the protected age group, and he was adversely affected by Newspapers First's decision to select Malloy, who is sixteen years younger than Isenbergh, as the new manager.[1] Moreover, because the decisionmakers for Newspapers First were familiar with Isenbergh's performance in his work for KRNS, we can infer from the fact that he was granted an interview that Isenbergh was at least at some level qualified for the new job. Without deciding the ultimate question of whether a jury could reasonably

---

[1]That Malloy was also a member of the class of persons protected by the ADEA does not render insufficient Isenbergh's prima facie showing. *See O'Connor v. Consol. Coin Caterers Corp.,* --- U.S. ----, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

infer intentional discrimination, we believe that Isenbergh has satisfied this part of the *McDonnell Douglas- Burdine* burden-shifting analysis.

B.

*1. Newspapers First's Burden of Proffering a Non-Discriminatory Rationale For the Challenged Decision*

We next inquire whether Newspapers First has met its burden of producing evidence of a legitimate, nondiscriminatory reason for offering the job to Malloy rather than to Isenbergh. *See generally Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). This burden on the employer is one of production, not persuasion. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). If the burden is met, the *McDonnell Douglas* framework "drops out" of the case, leaving the jury to decide the ultimate question of whether the employer intentionally discriminated on the basis of age. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. Here, Newspapers First met its burden of production by asserting that Isenbergh was denied the managerial position because he was the less qualified of two applicants for the same job.

*2. Isenbergh's Burden of Proving that Age Was the Real Reason For the Challenged Hiring Decision*

Newspapers First having met its burden of production, it fell to Isenbergh to show that the employer's proffered reason for the adverse employment decision was false and that discrimination was the real reason. *Id.* at 515, 113 S.Ct. at 2752. On this point, we worry that there is some conflict in the case law of this circuit.

The conflict concerns whether a plaintiff in Isenbergh's position carries his burden of proof on discrimination just by showing a basis in the record for disbelief of the employer's reason. The origin of the conflict is the Supreme Court's opinion in *Hicks.*

*Hicks* involved alleged employment discrimination based on race. It decided a narrow question which arose from a bench trial. The *Hicks* Court held that the plaintiff was unentitled to judgment as a matter of law even though the trier of fact—a district judge—disbelieved the employer's proffered nondiscriminatory reason. The district judge did not believe the employer's reason for firing the plaintiff, but also did not think that the plaintiff had proved that race was the real reason for his discharge. The district court, therefore, entered judgment for the defendant employer. The Eighth Circuit reversed, deciding that the discrediting of the employer's proffered reason entitled the plaintiff to judgment as a matter of law. The Supreme Court in turn reversed the court of appeals and remanded the case for further proceedings consistent with its opinion, reinstating the judgment entered in favor of the defendant by the district court as the trier of fact. Because *Hicks* was a case that had been fully tried before a judge sitting as the trier of fact, *Hicks* decided nothing about either Rule 50 (judgment as a matter of law in actions tried by jury) or Rule 56 (summary judgment) in employment discrimination cases.

This case is about Rule 50. Isenbergh argues that never can an employer be entitled to a judgment as a matter of law in an employment discrimination case if the evidence is sufficient to

allow the jury to disbelieve the employer's proffered reason for the employment action. To support this argument, Isenbergh looks beyond the decision in *Hicks,* that is, its holding, and stresses some language lifted from the opinion in *Hicks:*

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may,* together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, *will permit* the trier of fact to infer the ultimate fact of intentional discrimination, ... [and] upon such rejection, "[n]o additional proof of discrimination is required,"....

*Id.* at 511, 113 S.Ct. at 2749 (quoting *Hicks v. St. Mary's Honor Center,* 970 F.2d 487, 493 (8th Cir.1992)) (emphasis added).

We do not see these sentences as giving force to Isenbergh's argument. The first sentence of this passage shows that disbelief of the employer's proffered reason may (and by implication, may not) be enough for a plaintiff to overcome an employer's motion for judgment as a matter of law. The second sentence is potentially more confusing in saying that rejection of the proffered reason "will permit" the inference of discrimination. But keeping in mind that the word "will" sometimes means "can" (for example, "can permit") or "capable of," (for example, "capable of permitting"), both sentences, when read together, at least strongly suggest that rejecting the employer's proffered reason is not *always* sufficient to allow a finding of discrimination, although *sometimes* "(particularly if disbelief is accompanied by a suspicion of mendacity)" it might be. The *Hicks* Court spoke in a similar way in the accompanying footnote:

> Contrary to the dissent's confusion-producing analysis, there is nothing whatever inconsistent between [the statement quoted above] and our later statements that (1) the plaintiff must

show "*both* that the reason was false, *and* that discrimination was the real reason," and (2) "it is not enough ... to *dis*believe the employer." Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*

*Id.* at 511 n. 4, 113 S.Ct. at 2749 n. 4.

In the context of the *Hicks* decision and the whole opinion, we think the phrase "(as we say here)" probably means "(as we say in this case, that is, in the matter before us)": given the record in *Hicks,* itself, the rejection of defendant's proffered reasons was enough—in Mr. Hicks' case, no more proof was required—to have supported a finding of discrimination.

While the language from the *Hicks* opinion might be capable of being read in two or more ways, the most important thing to recall about *Hicks* is plain: the case before the Court was not about Rule 50, a jury trial, or a verdict for plaintiff. Thus, the Court was deciding nothing about a case that presents those circumstances.

Some confusion exists in the law of this circuit about whether *Hicks* always precludes judgments as a matter of law for employers whenever there is a plausible basis on which to disbelieve the employer's proffered reason for the employment decision in question. *Howard v. BP Oil Co.,* 32 F.3d 520, 527 (11th Cir.1994), for example, concluded that under *Hicks,* "the fact finder's rejection of defendant's proffered reasons is sufficient circumstantial evidence upon which to base a judgment for the plaintiff."[2] *Howard* reversed a summary judgment for the defendant

---

[2]*Howard* is not the court's only opinion that says this kind of thing. *Howard,* however, may possibly be the only case in which the facts before the court were such as to make the statement determinative of the outcome.

where the record provided a basis for the disbelief of the defendant's proffered explanation.

If *Howard* was purporting to set out a legal principle that had application beyond its own facts, *Howard* seems inconsistent in this regard with the holding in, at least, *Walker v. NationsBank,* 53 F.3d 1548 (11th Cir.1995), and with some of the language in *Batey v. Stone,* 24 F.3d 1330 (11th Cir.1994). *See NationsBank,* 53 F.3d at 1557-58 (accepting plaintiff's contention that defendant's proffered reasons were lies, and nonetheless affirming directed verdict for defendant); *Batey,* 24 F.3d at 1334 n. 12 (noting that after *Hicks,* focus in discrimination cases is no longer falsity of employer's explanation, but whether plaintiff has proved intentional discrimination).

We doubt that *Howard* 's words are supported by the reasoning of Justice Scalia's opinion for the Court in *Hicks,* and we believe that *Howard* is mistaken when it reads *Hicks* as controlling kinds of cases that were not before the Supreme Court in *Hicks.*[3] Again, *Hicks* only held that a judge may, after a bench trial, disbelieve the employer's proffered reason for a hiring decision and yet still grant judgment to the employer. *Hicks,* 509 U.S. at 508-11, 113 S.Ct. at 2748-49. So, despite the *Hicks* language quoted above, we have no confidence that the *Hicks* decision dictates to circuit and district judges, or even was intended to suggest, that every time the evidentiary record in a case could support a jury's disbelief

---

[3]While the *Howard* court referred to *St. Mary's Honor Center v. Hicks* in shortened form as "*St. Mary's,* " we refer to the case as "*Hicks* " because that name is the more widely used shortened form of the case name and because Hicks is the name of the first non-governmental party.

of the employer's explanation for the pertinent employment action, no court may grant a motion for judgment as a matter of law to the employer (or grant to an employer summary judgment) in an employment discrimination case. In our view, *Hicks,* taken as a whole, more likely supports a different conclusion: in such circumstances, the watchword would be not "every time," but "sometimes."

According to *Hicks,* cases will exist where certain facts are established at trial, among them facts supporting the "dis-believability" (put differently, the unbelievableness) of the employer's reasons for the challenged employment decision, and where nonetheless the application of the law to the facts established at trial will yield a decision by the factfinder for the employer. Accepting *Hicks* 's holding, we still also think there will be some cases in which the record, viewed in the light most favorable to the plaintiff, supports the dis-believability of the employer's reason; and yet the application of the law to the evidence demands a judgment for the employer as a matter of law.

Assume the following situation by way of example. A defendant sues, alleging he was terminated based on his membership in a protected class. The employer responds with a neutral reason for the hiring decision: the employee was terminated because he was late nine times. After a bench trial, the judge finds, among other facts, that the defendant was late not nine, but seven times. Relying on *Hicks,* however, the judge determines that this case is one where the employer's reason should be disbelieved, but where application of discrimination law to the instant facts (including

dis-believability) nonetheless supports a judgment for the employer. This result is the one specifically authorized by *Hicks.* *See* 509 U.S. at 508-11, 113 S.Ct. at 2748-49.

The issue in *Howard* and *NationsBank* and the issue alluded to in the original panel opinion here is essentially this one: might there be a case where the application of law to facts can proceed in a similar way, but at the summary judgment stage or for the purposes of judgment as a matter of law? To continue with the prior example, suppose the employer offers the nine-latenesses explanation, and the record in a jury trial shows that no reasonable jury could find but that the plaintiff was late only seven times. Assuming the employee made out a bare prima facie case and nothing else points to discrimination, may the employer—at least, sometimes—be entitled to a judgment as a matter of law even though the jury could (indeed, must) disbelieve the employer's stated reason? The *Howard* panel, reading *Hicks,* seems to say "no."

We suspect, however, that the answer is "yes"—that *NationsBank,* not *Howard,* is the more correct statement of the law. *Howard* 's understanding of *Hicks* would preclude a judgment as a matter of law in some cases where historically (pre-*Hicks* ) such judgment was required. But the *Hicks* opinion says that trial courts and reviewing courts should not treat discrimination differently from other ultimate questions of fact. 509 U.S. at 523-25, 113 S.Ct. at 2756. So, we are skeptical that the Supreme Court intended to remove an entire category of cases from traditional consideration under Fed.R.Civ.P. 50 or 56. *See generally Earley v. Champion Intern. Corp., * 907 F.2d 1077, 1080

(11th Cir.1990) ("The summary judgment standard mirrors the standard for a directed verdict under the Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.") (citations and internal quotation marks omitted); *see also Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) (en banc) (concluding that when employer's reason is disbelieved, "we are convinced that ordinarily such verdicts [for plaintiffs] would be supported by sufficient evidence, but not always. The answer lies in our traditional sufficiency-of-the-evidence analysis").

We doubt the Supreme Court intended to command such a dramatic and hurtful-to-employers change in the law when the Court decided *Hicks:* a decision which did not contract, but expanded, the universe of discrimination cases where judgment for employers would be permissible. We believe the Supreme Court would not declare such an important new rule—the rule which *Howard* sees in *Hicks*—in a case in which the new rule plays no vital part in the decision. We think the Supreme Court would have set out such an important new rule—one that, in effect, partly nullifies two of the Federal Rules of Civil Procedure—conspicuously and plainly so that no Article III judge could miss it. Simply put, we fear that what *Howard* says about sufficient evidence is a mistake which was caused by extending possibly ambiguous language in *Hicks* to decide a case (*Howard* ) that presented a question not decided in *Hicks.*

Having noted the ostensible[4] conflict in the circuit's law and having had our say about it, we return to the case before us now. Whatever significance Howard might have, *Howard* does not control this case because our examination of the record here indicates that Isenbergh failed in creating an issue of fact about the dis-believability of the employer's reason for the hiring decision.

C.

Newspapers First has produced evidence showing that the principal criterion used in determining who would get the job was management ability, as assessed at the interviews and by evaluating past performance. And, Isenbergh's efforts to produce a basis to contradict Newspapers First's nondiscriminatory justification do not suffice to create a jury question on the issue of pretext. So, even if *Howard* is and ought to be the law, and a plaintiff—by providing a basis to doubt the employer's justification—can bar his employer's obtaining a judgment as a matter of law, Isenbergh has still failed to do so in this case.

"[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present "significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988) (quoting

---

[4]We say *ostensible* conflict because we observe that *Howard* is a summary judgment case and that *NationsBank* is a Rule 50 case. This difference may be important. We today do not mean to rule out the possibility that motions for judgment as a matter of law in cases which have been fully tried, including the cross-examination of witnesses, may be governed by some different principles than those governing the grant or denial of summary judgment. So, the words of the *NationsBank* opinion might be inconsistent with the words of the *Howard* opinion, yet the two decisions might not be conflicting.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (discussing summary judgment standard)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

In the discrimination context, we have stated that "[it] bears repeating that a mere scintilla of evidence does not create a jury question." *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989) (holding, in ADEA case, that defendant was due judgment as matter of law where plaintiff failed to cast sufficient doubt on defendant's proffered non-discriminatory rationale). And, in considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's *overall* justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification itself. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 952-54 (11th Cir.1991) (although plaintiff succeeded in contradicting some facts alleged by defendant, plaintiff presented no jury question because defendant's ultimate justification went essentially unchallenged).

Here, as noted above, Newspapers First's proffered rationale was that Isenbergh was the less qualified of the two applicants for the job. In support of this assertion, Newspapers First presented

the jury with evidence to show that Malloy, Isenbergh's competitor, managed a larger office;  that Isenbergh had difficulties agreeing to office budgets;  that Malloy was perceived by the decisionmakers as more of a team player;  that Malloy was near the top of the rankings under the alternation ranking system, while Isenbergh ranked second-to-last;  and that Malloy had dealt with a larger number of major market newspapers than had Isenbergh.  Also, the evidence showed that the favorable past ratings Isenbergh pointed to related to Isenbergh's *sales,* not *managerial,* experience.

In the light of the extensive evidence supporting Newspapers First's contention that it hired Malloy because it believed him the better-qualified applicant, Isenbergh's efforts to prove Newspapers First's justification a pretext for discrimination do not succeed in creating a jury question.  Isenbergh points out that he had successfully competed for a sales account with Malloy in 1986, that he had consistently received raises, that the alternation ranking system had not always been used, and that his would-be employers appeared bored and disinterested during his interview.  These things provide a basis on which to question some facts offered by Newspapers First in support of its decision;  but they do not, in view of Defendant's overwhelming evidence, provide a basis for contradicting Newspapers First's ultimate justification:  Malloy was more qualified. *See Brown v. American Honda Motor Co.,*  939 F.2d 946, 952-54 (11th Cir.1991) (although plaintiff presented evidence that defendant slighted the procedures set out in its manual, plaintiff failed to create sufficient basis to disbelieve defendant's ultimate reasons for selecting other applicant).

III.

Newspapers First argues that Isenbergh's failure to remain employed and thereby mitigate his damages cuts off any claim that he may have. In view of our ruling, we need not address this issue.

For the foregoing reasons, the judgment of the district court is AFFIRMED.