Mary Lou **MALEWSKI**, Plaintiff,

v.

**NATIONSBANK OF FLORIDA, N.A.,** a national corporation, Defendant.

.No. 96–6777–CIV.

United States District Court, S.D. Florida.

Sept. 18, 1997.

G. Ware Cornell, Jr., Ft. Lauderdale, FL, for plaintiff.

Robert Kofman, Stearns Weaver Miller, Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment filed July 7, 1997. This motion is ripe for resolution, and the Court took oral argument on it on September 12, 1997. After a thorough review of the record and pleadings, and having considered argument of counsel, the defendant's motion for summary judgment is GRANTED.

## I. INTRODUCTION

This is an action brought under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621, *et seq.*, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. 760.01 *et seq.*, which is premised on age and disability discrimination. Plaintiff has voluntarily dismissed her FMLA claim.

## II. FACTUAL BACKGROUND

From 1967 until 1977, Mary Lou Malewski worked as a secretary for American National Bank. Thereafter, in 1977, Malewski began working as a secretary with Landmark Bank. Malewski remained employed while, through a series of corporate changes, Landmark became part of C & S Bank. C & S Bank thereafter merged with NCNB to become NationsBank.

In 1992, Malewski began working as an Administrative Assistant in Nations-Bank's newly created Business Banking Department. Following the formation of NationsBank, the Administrative Assistant position evolved from being mostly secretarial/clerical to involving greater responsibility, customer contact, sales support, loan documentation, and administrative tasks. (Defendant's Statement of Undisputed Material Facts, pp. 1–2). As the banking industry changed and Nations-Bank strove to become more efficient, Administrative Assistants were increasingly required to cross-sell bank services, work directly with customers, and utilize computers. (Defendant's Motion for Summary Judgment, p. 2). NationsBank's operations relied heavily on the use of computers and Malewski did not have any discernible computer skills in 1992. (Defendant's Statement of Undisputed

Material Facts, p. 2). Malewski's personal computer skills, customer service skills, and documentation skills were inferior to those of her peers, and she was reluctant to learn and perform the evolving skills required by Administrative Assistant. (Id.)

On or about June 28, 1993, Malewski received a performance appraisal for 1992 (the "1992 appraisal") which rated her as a 2 (below expectations) on a scale from 1 (not acceptable) to 5 (consistently meets expectations) in the categories of customer focus and initiative. (Id., at p. 2). Malewski's supervisor noted in this appraisal that Malewski (1) was unable to assist in systems implementation; (2) needed to become more proactive in assisting bank officers with customer service and other business needs; (3) needed to assume responsibility for administrative duties which bank officers were performing; and (4) needed to assume a greater leadership role in fostering teamwork throughout the department staff. (Id.)

Malewski was diagnosed with breast cancer in November 1993 and she informed her supervisor shortly thereafter. Malewski had a lumpectomy in December 1993 and thirty-eight radiation treatments in 1994. Malewski was permitted to take time off for the surgery and radiation treatments. On or about May 12, 1994, Malewski received an improved performance appraisal for 1993 (the "1993 appraisal"), rating her a 3 (performance met expectations) in the areas where she previously rated a 2. (Id. at p. 3). On or about February 8, 1995, Malewski received a performance appraisal for 1994 (the "1994 appraisal") wherein she received a 2 (below expectations) in the areas of customer focus, leadership and teamwork, and a 2.5 (between below expectations and met expectations) in initiative. The performance appraisal noted that Malewski (1) lacked the personal drive to carry out her responsibilities, thus impeding her ability to provide value added service, ensure customer satisfaction, and retain clients; (2) often displayed a negative attitude, thus resulting in several complaints about her demeanor; (3) was reluctant to learn NationsBank's commercial documentation system and appeared to resent that aspect of her job; and (4) needed to demonstrate greater flexibility and prioritize work to effectively handle numerous tasks at the same time. (Id.)

Malewski testified that her supervisor Ms. Shuman told Malewski that she needed to "leave it at home." Shuman made this comment at some point between the time Malewski was diagnosed with cancer and when she was terminated. Malewski testified that she thought Shuman, in this comment, was referring to Malewski's cancer, her treatments, and the stress she was experiencing as a result of her condition. (Plaintiff's Memorandum in Opposition to Summary Judgment, p. 3). NationsBank argued that this comment referred to Malewski's negative attitude that should be "left at home." Malewski admits that this is the only negative comment that was ever made by NationsBank that she felt referred to her cancer.

In June, 1995 Malewski was informed that she was going to be terminated as a result of a "reduction in force." NationsBank admits that Malewski "was selected for inclusion in the reduction-in-force based, in part, on her 1994 performance appraisal." (Defendant's Answer and Affirmative Defenses, p. 2). Malewski alleges that NationsBank used a subjective and discriminatory "stacked" ranking system [1] to determine which employees would be terminated. She argues that the end result of the reduction in force was that she was out of a job yet the number of employees in her department was increased by one. According to Malewski the employees that filled her vacant position, and a

---

1. In an effort to determine which employees would be retained in the RIF, managers of units "stack ranked" their employees, i.e., the highest ranking employee was placed in the number 1 spot, and so on. According to NationsBank, the Administrative Assistants were ranked according to evaluations done by the supervisors of the units. The supervisors evaluated each employee's performance history, competencies, skills, and the ability to satisfy the requirements of the new position. The Senior Vice President responsible for Business Banking, P & E, CAT, and RSS units in Florida then reviewed the evaluations with the supervisors, ranked all of the associates who worked under the Senior Vice President's supervision, and decided who would be terminated. (Defendant's Motion for Summary Judgment, pp. 8–9).

newly created Administrative Assistant position, were both in their thirties.

NationsBank contends that in 1995 it created an Underwriting and Support Unit in St. Petersburg, Florida, thus causing the reorganization, consolidation, and RIF of four units (*i.e.,* Business Banking, P & E, CAT and RSS) from Florida, Georgia, Tennessee, and Texas. At the time of the RIF, Joseph D. Hill, Jr. ("Hill") was the Senior Vice President responsible for Business Banking, P & E, CAT, and RSS units in Florida. At the time of the RIF, Robert Graulich managed the Business Banking and P & E units; Gene Taylor managed the RSS and CAT units.

According to NationsBank, approximately 25 former NationsBank employees were affected by the 1995 RIF. (Defendant's Reply, p. 6). Of those 25, approximately 6–7 Administrative Assistants lost their positions. (Graulich Dep., p. 36). Taylor's units were eliminated as part of the RIF. (Graulich Dep., p. 11; Taylor Dep., p. 13). Consequently, according to NationsBank, some of the functions of these units were centralized in St. Petersburg and some of these functions were absorbed by the Business Banking and P & E units. (Graulich Dep., p. 11).

NationsBank contends that there is no dispute in the record that there was a net loss of employees among those holding a similar job classification as Malewski. All of the administrative assistants from all the affected units were combined into one "stack ranking." (Graulich Dep., pp. 13–14; Hill Dep., pp. 14, 19). As part of the RIF, Malewski's former unit took on new responsibilities and thereafter added a position. According to NationsBank, the individuals Malewski asserts took her position were "stack ranked" in front of her. Malewski does not contest this. Among the persons ranked above Malewski was a woman who was over the age of forty with a hearing disability.

## III. STANDARD OF REVIEW

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As the Eleventh Circuit has explained:

In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [ *Environmental Defense Fund v.* ] *Marsh,* 651 F.2d [983] at 991 [(5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic [Techniques v. Wackenhut Protective Systems],* 669 F.2d [1026] at 1031 [(5th Cir.1982) ]; *Croley v. Matson Navigation Co.,* 434 F.2d 73 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1609–10 ...; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the

facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which district courts should apply when ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–480 [64 S.Ct. 232, 234, 88 L.Ed. 239] (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further acknowledged that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding in his favor, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In a companion case, the Supreme Court declared that a non-moving party's failure to prove an essential element of its claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We measure the Plaintiff's motion for summary judgment against these standards.

## IV. ADA CLAIM

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In the ADA, Congress has imposed upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A).

In order to establish a prima facie case of discrimination under the ADA and survive summary judgment, Malewski must demonstrate that (1) she has a disability; (2) she is a qualified individual who can perform the essential functions of her job with or without reasonable accommodation; and (3) she was subjected to unlawful discrimination as the result of her disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir.1996); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996). In addition, a plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to

be disabled. *Gordon,* 100 F.3d at 910; *Morisky,* 80 F.3d at 448.

A "qualified individual with a disability is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desire." 42 U.S.C. § 12111(8). In the ADA, Congress has defined "disability" as a (1) physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(2). An individual is deemed to be "disabled" for purposes of the ADA if she satisfies any one of these three enumerated definitions.

Courts have differed in determining whether cancer can be considered a disability under the ADA. Whether or not it substantially limits major life activities depends upon each case's factual circumstances. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)(Under the Rehabilitation Act, hospitalization sufficient to establish substantial limitation of major life activity); *Moore v. Sun Bank of North Florida,* 923 F.2d 1423 (11th Cir.1991)(assuming that brain tumor was a handicap, under the Rehabilitation Act); *Katradis v. Dav–El of Washington, D.C.,* 846 F.2d 1482 (D.C.Cir.1988)(noting that the District of Columbia Human Rights Act, wherein handicap has historically been interpreted precisely as the Rehabilitation Act's use of the word, now explicitly states that cancer "substantially limits major life activities"); *Anderson v. Gus Mayer Boston Store of Delaware,* 924 F.Supp. 763 (E.D.Texas 1996) (testicular cancer in this case, where plaintiff was subject to surgery and irradiation of the testicles is probably a disability or is regarded as such); *Braverman v. Penobscot Shoe Company,* 859 F.Supp. 596 (D.Maine 1994)(summary judgment inappropriate on issue of whether plaintiff's cancer is a disability, because of the factual issues that remain for resolution); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187 (5th Cir.1996)(Although employee's breast cancer was an "impairment" within the meaning of the ADA, she did not establish that it substantially limited major life activity so as to establish ADA claim); *Farmer v. National City Corp., et al.,* No. C–2–94–966, 1996 WL 887478 (S.D.Ohio April 5, 1996)(plaintiff failed to identify any "major life activity" which has been affected by cancer, and thus failed to demonstrate that he suffered a "disability" under the ADA).

■ In this case the plaintiff does not argue that she had a disability, but rather that the defendant perceived her as disabled. During oral argument, her counsel also contended that her performance as reviewed in the 1994 evaluation may have been affected by her concerns about her health.

Malewski argues that "it is obvious from the derogatory 1994 performance evaluation Malewski received after informing Defendant of her cancer and taking time off from work for surgery and to receive thirty-eight radiation treatments during 1994 and her supervisor's comment 'to leave it at home,' that Malewski was perceived as disabled." (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, pp. 13–14). The EEOC regulations define one who is "regarded as having such an impairment" as an individual who "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by her employer as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment but is treated by her employer as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*); *Gordon,* 100 F.3d at 912, 913.

As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. *Gordon,* 100 F.3d at 913; *Ellison,* 85 F.3d at 192; *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995); *Byrne v. Board of Education,* 979 F.2d 560 (7th Cir.1992). In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks. *See* 29

C.F.R. § 1630.2(j)(3); *Ellison*, 85 F.3d at 192.

Courts have observed that the focus of these ADA provisions and regulations is on the impairment's effect on the attitude of others. *Gordon*, 100 F.3d at 913; *Wooten*, 58 F.3d at 385; *Byrne*, 979 F.2d at 566. The provisions are intended to combat the "archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities." *Gordon*, 100 F.3d at 913; *Wooten*, 58 F.3d at 385 (citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)).

In reviewing the evidence in the record in the light most favorable to Malewski, the Court concludes that such evidence is insufficient to support a finding that NationsBank regarded Malewski as having a physical or mental impairment that substantially limited her ability to care for herself or to work. Malewski's supervisor testified in a deposition that Malewski consistently demonstrated the physical and mental ability to perform the essential functions of her job which belies the fact that she was perceived as disabled. (Defendant's Statement of Uncontested Facts, p. 8). The evidence also shows that Malewski received a below average performance appraisal for 1992 before she was diagnosed with breast cancer. Furthermore, Malewski received an improved review for 1993 after she was diagnosed with cancer. Malewski told her supervisor that she had cancer shortly after being diagnosed with cancer in November 1993. On or about May 12, 1994, approximately six months after learning of Malewski's breast cancer, NationsBank gave Malewski an improved performance appraisal. This review illustrates that NationsBank was aware of her condition and felt that she was capable of performing the functions of her job.

Malewski simply asserts that it is "obvious from the derogatory 1994 performance evaluation ... that Malewski was perceived as disabled." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, pp. 14–15). However, the 1994 review was consistent with her ratings for 1992, before she was diagnosed with breast cancer. The fact that she again received an unsatisfactory review in 1994 does not raise an inference that NationsBank perceived Malewski as foreclosed from being able to perform her job because of her cancer.

Malewski also asserts that her supervisor's comment "to leave it at home" shows that she was perceived as disabled. This single, ambiguous comment does not create a jury question as to whether or not NationsBank perceived Malewski as disabled.

Even assuming Malewski could establish a jury question as to whether she was perceived as disabled, she has failed to prove that NationsBank discriminated against her because of her alleged disability. The Court reaches this conclusion by employing the indirect, three step burden-shifting method of proof analysis developed in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the first stage of this approach, Malewski bears the burden of establishing the four elements of a prima facie case of disability discrimination. A plaintiff establishes a prima facie case of discrimination if she can show that (1) she is a member of a protected class; (2) she is qualified to perform the job at issue; (3) she has suffered some adverse employment action; and (4) someone outside the protected class of which she is a member was treated differently. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515 (11th Cir.1991). Even if it is assumed that the plaintiff could make a prima facie case, application of the *McDonnell Douglas* analysis requires entry of summary judgment for the defendant.

The second stage imposes a burden of production on the employer to articulate a legitimate non-discriminatory reason for terminating the employee. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.1984). NationsBank's reason for terminating Malewski was that her most recent performance appraisals

placed her at the bottom of the stack ranked administrative assistants, and the RIF necessitated that she be included in the reduction. The Court finds that this is a legitimate nondiscriminatory reason which rebuts the presumption of discrimination and shifts the burden back to Malewski.

In the final stage of the analysis, the employee must show that the proffered reasons are a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff has the opportunity to come forward with evidence, including the previously produced evidence established in the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997), *citing, McDonnell Douglas*. This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff. *Holifield*, 115 F.3d at 1565; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ NationsBank insists that Malewski was terminated solely because she failed to adapt to the evolving requirements of her position (*i.e.*, cross-selling bank services, working directly with customers, and utilizing computers), she was resistant to change despite NationsBank's efforts to train and assist her, and because two of her most recent performance appraisals were deficient. NationsBank admits that Malewski was included in the RIF in part because of her 1994 performance evaluation, but contends that Malewski's cancer had nothing to do with their decision to include her in the RIF. Malewski argues that the stack ranking system was totally subjective and evidences NationsBank's intent to discriminate against her because of its perception of her as being disabled.

Malewski's poor performance rating for 1994 was a factor in NationsBank's selection of Malewski for termination. It is possible that Malewski's performance for 1994 was affected by Malewski's cancer or her concerns about her health. However, Nations-Bank's decision to fire Malewski because of poor performance, which may have been caused in part by her illness, is not tantamount to firing her because of a disability or perception of a disability.

This conclusion is consistent with the United States Supreme Court's holding in *Hazen Paper Company v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In *Hazen Paper*, the 62 year old plaintiff was fired from his job just a few weeks before his pension benefits would have vested. The evidence showed that the employer fired the plaintiff to prevent his pension from fully vesting. The plaintiff sued under the ADEA claiming that his age had been a determining factor in the termination decision.

The Court ruled that the evidence did not show that the employer's decision was based on age. Instead, the Court decided that an employee's age and his employer's financial status are district and that so long as age does not enter the employer's decision-making process, there is no violation of the ADEA. The Court emphasized that "[t]his is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* Stated another way, "decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited." *E.E.O.C. v. Francis W. Parker Sch.*, 41 F.3d 1073 (7th Cir.1994).

Decisions which are based on reasons independent of disability but which may correlate with disability are not actionable under the ADA. *See Francis W. Parker*, 41 F.3d at 1077. The ADA does not prohibit an employer from holding disabled employees to the same productivity standards as non-disabled employees. 29 C.F.R. § 1630 App. "The ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled." *Id.*

Malewski's position is similar to that of the plaintiff in *Callan v. Amdahl Corp.*, No. C–

94–0295–VRW, 1995 WL 261420 (N.D.Cal. April 25, 1995). In *Callan*, the plaintiff, who suffered from a heart condition, sued under the ADA and the ADEA after he was terminated during a reduction in force. *Id.* at *1–2. During the RIF, managers were instructed to rank employees in their departments. *Id.* at *2. Based on managerial rankings, many employees, including plaintiff, were terminated. In an attempt to prove pretext, the plaintiff argued that the only reason he was fired was because his last performance evaluation ranked him "below requirements." *Id.* Like Malewski, the plaintiff introduced evidence that the deficiency in his performance review may have been caused by his disability. *Id.* at *3.

The court concluded that "[n]one of this evidence demonstrates that defendant's decision to terminate plaintiff's employment was for any reason other than the one defendant offers, namely the defendant's business-related RIF. An employee's illness does not insulate the employee from legitimate employer concerns about his ability to perform .... Such evidence is not even a mere scintilla of evidence that the employer acted on the basis of motives prohibited under the Act and is insufficient to survive summary judgment." *Id.; see also Jacquez v. Diameters Corp.,* No. 93 C 0986, 1995 WL 144486 at *6–7 (N.D.Ill. March 31, 1995) (fact that older employees are terminated during RIF because they are less productive does not evidence age discrimination).

Here it is undisputed that Malewski's performance evaluations in 1992, 1993, and 1994 placed her at the bottom of the "stack ranking" of administrative assistants. NationsBank says she was terminated for that reason. She counters that her 1994 evaluation was unfair either because her performance was affected by her illness or that the evaluation was inaccurate because of her supervisor's perception of her illness. However, this is not evidence of pretext. Even if a jury could conclude that the 1994 rating was wrong that would not create an inference that the reason given for her termination was not the real reason.[2] Moreover, there is no

evidence that a perception of disability because of Malewski's cancer was a motivating factor in NationsBank's decision to terminate her employment. Summary judgment is therefore required on her ADA claim.

## V. ADEA CLAIM

The Eleventh Circuit has held that a reduction in force plaintiff who has been terminated from employment may establish a prima facie case of age discrimination by showing that: "(1) they were a member of the protected age group and was adversely affected by the employment decision; (2) they were qualified for the current position or to assume another position at the time or discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436 (11th Cir.1996) (quoting *Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990)). The *Isenbergh* court created a standard whereby courts "should examine the facts of the case and decide 'whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision.' " *Id., citing Pace v. Southern Railway System,* 701 F.2d 1383 (11th Cir.1983).

The Court finds that Malewski has satisfied the first two elements of the prima facie case. Without determining whether a jury could reasonably infer intentional discrimination, the Court will assume that Malewski can demonstrate the prima facie part of the *McDonnell Douglas–Burdine* burden-shifting analysis.

■ NationsBank's burden under the *McDonnell Douglas–Burdine* analysis is to produce evidence of a legitimate, nondiscriminatory reason for not offering the job to Malewski. *See generally Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This burden on the employer is one of production, not persuasion. *St. Mary's Honor Center v.*

---

**2.** Ms. Shuman, the supervisor who evaluated Malewski in 1992, 1993 and 1994 played no role in

the Reduction in Force decisions that led to the termination.

*Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the burden is met, the *McDonnell Douglas* framework "drops out" of the case, leaving the jury to decide the ultimate question of whether the employer intentionally discriminated on the basis of age. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. Here, NationsBank has met its burden of production by asserting that Malewski was denied a servicing specialist position because she was the least qualified of those seeking the position.

NationsBank having met its burden of production, it falls to Malewski to show that the employer's proffered reason for the adverse employment decision was false and that discrimination was the real reason. *Id.* at 515, 113 S.Ct. at 2751–52. Malewski argues that the "mere existence of a totally subjective ranking system endorsed by the person in charge of ensuring fairness is evidence of the discriminatory atmosphere at NationsBank." (Plaintiff's Response, p. 12). The Court finds that Malewski has failed in creating an issue of fact about the disbelievability of the employer's reason for the hiring decision. Malewski has offered no evidence that her age was a factor in this ranking system.

NationsBank has produced evidence showing that the principal criterion used in determining who would get jobs under the RIF was ability, as assessed by supervisors who were knowledgeable about employers' past performance. Malewski's efforts to produce a basis to contradict NationsBank's nondiscriminatory justification do not suffice to create a jury question on the issue of pretext.

"Because the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh,* 97 F.3d at 444; *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing summary judgment standard)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-

discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

In the discrimination context, the Eleventh Circuit has stated that "[it] bears repeating that a mere scintilla of evidence does not create a jury question." *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989) (holding, in ADEA case, that defendant was due judgment as a matter of law where plaintiff failed to cast sufficient doubt on defendant's proffered non-discriminatory rationale). In considering whether a plaintiff has presented a jury question on pretext, the Eleventh Circuit has required that the plaintiff point to facts which, if true, would present a basis for the disbelief of defendant's overall justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification itself. *Isenbergh,* 97 F.3d at 444; *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir.1991).

In this case, NationsBank's proffered rationale for including Malewski in the RIF was that her past performance made her the least qualified to take on a position which would demand more skill and responsibility. In support of this assertion, NationsBank presented the Court with evidence to show that Malewski was included in the RIF because her skills and performance record placed her at the bottom of the "stack ranked" employees. Malewski challenges the validity of the stack ranking system utilized by NationsBank. While the "stack ranking" system may be subject to criticism, Malewski has offered no evidence upon which a reasonable juror would have a basis to disbelieve defendant's ultimate reasons for terminating her. Therefore, NationsBank's motion for summary judgment on the ADEA claim is GRANTED.

## VI. FCRA CLAIMS

Many courts have taken judicial notice of the fact that the FCRA, Fla. Stat. ch. 760.01–760.11 (1995), is closely patterned after its federal equivalent. "If a Florida statute is modeled after a federal law on the same subject, the Florida statute will take on the

same construction as placed on its federal prototype, insofar as such interpretation is harmonious with the spirit and policy of the Florida legislation." *Edwards v. Wallace Community College,* 49 F.3d 1517 (11th Cir. 1995); *Barnett v. Lockheed Martin Corp.,* No. 95–1152–Civ–ORL–18, 1997 WL 106115 (M.D.Fla. Feb.6, 1997); *Brand v. Florida Power Corp.,* 633 So.2d 504 (Fla. 1st DCA 1994); *see also Florida Dep't of Community Affairs v. Bryant,* 586 So.2d 1205 (Fla. 1st DCA 1991). Therefore, the court may examine defendant's motion for summary judgment as to the FCRA claims using traditional federal discrimination analysis.

Because the court has already found that the plaintiff has failed to establish a successful cause of action under the ADA and the ADEA, her FCRA counts will fail as well. Accordingly, defendant's motion for summary judgment as to the FCRA counts is GRANTED.

## VII. CONCLUSION

Since NationsBank has proffered evidence supporting a legitimate, non-discriminatory reason for Malewski's termination, and Malewski has not come forward with any evidence to show that this reason is pretextual, summary judgment is warranted on all counts. Plaintiff's demand for attorney's fees and damages is DENIED.

Therefore, upon careful consideration of the record and for the reasons discussed above, it is ORDERED AND ADJUDGED that defendant NationsBank's motion for summary judgment is hereby GRANTED.