**Cornelious HOWARD, Plaintiff–Appellant,**

v.

**BP OIL COMPANY, INC., Defendant–Appellee.**

No. 93–9209.

United States Court of Appeals, Eleventh Circuit.

Sept. 16, 1994.

Gary Richard Kessler, Kitchens Kelley Gaynes, P.C., Atlanta, GA, for appellant.

Curtis L. Mack, Sonja Faye Bivins, Jack L. McLean, Mack & Berstein, Atlanta, GA, for appellee.

Before BIRCH and CARNES, Circuit Judges and MORENO,* District Judge.

MORENO, District Judge:

This case requires the Court to analyze the plaintiff's burden of production in a § 1981 employment discrimination action [1] once the defendant moving for summary judgment offers evidence of a legitimate non-discriminatory reason for its decision not to enter into a contract with the plaintiff. The district court granted summary judgment for the defendant, finding that the plaintiff produced in-

sufficient evidence of the falsity of defendant's articulated race-neutral reasons for awarding contracts to non-black applicants. We disagree and find that the evidence in this case is sufficient for a reasonable trier of fact to conclude that the defendant acted with discriminatory intent.

## BACKGROUND

Defendant, BP Oil Company, Inc., is a major petroleum distributor. Approximately 55 to 70 BP stations are in operation in the Atlanta Metropolitan area. BP, itself, operates 30 to 40 stations and private dealers operate the rest, 25 to 30 stations. BP has three black dealers in the Atlanta area, none of whom has a station in the predominantly white areas of Atlanta. Cornelious Howard, who is black, brought the instant suit, alleging that BP intentionally discriminated against him based on his race by giving white and Asian applicants preferential consideration in awarding BP stations.

BP does not have written criteria for the selection of qualified dealers. BP simply seeks educated people with managerial experience who understand general business practices, adhere to BP's contract requirements, render good customer service, devote time to the dealership and can generate additional business. BP also values, but does not require, previous experience in the petroleum industry. Howard argues that BP's departure from these criteria and inconsistencies in BP's explanations for the departures constitute sufficient evidence of intentional discrimination to allow the case to proceed to trial.

In 1986 or 1987, Howard applied for a BP combination gas station and convenience store. At the time he applied, Howard had approximately 20 years of experience as a manager and sales person for the 3M Company. Howard also operated a janitorial business for six years, taught college for one year, and while a college student, worked at his father's service station in Alabama.

---

* Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. 42 U.S.C. § 1981 provides in part: "All persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...."

Howard has a Master's Degree from Alabama State University.

Howard met with and spoke to several BP managers about obtaining a BP station and BP managers claim they considered him a serious candidate. Despite Howard's qualifications, there were some limitations on BP's ability to grant Howard a station. First, BP had a limited number of stations available for new dealers. BP's district manager stated that there were no more than a couple of locations available for private dealers at any given time. Second, Howard expressed a strong preference for a station in a predominantly white area and within 15 miles of his home. Howard also expressed interest only in stations that did not provide auto repair services.

BP offered Howard a station on Cascade Road, which is in a predominantly black area. Howard said he would accept the station only if BP would also give him a more prosperous station such as the Cumberland Mall station and renovate the Cascade Road station. BP told Howard that the Cumberland Mall station was company-owned and therefore unavailable. Howard rejected BP's offer of the Cascade Road station. BP subsequently renovated the Cascade Road station and awarded it to Shaubat Noorani, who is not black.

BP then suggested that Howard consider stations in a predominantly white area at the Gwinnett Mall and in a racially mixed area at Clairmont Road. However, BP offered both stations to other applicants before Howard acted on BP's suggestion. In any event, Howard told a BP official that the Gwinnett station was too far from his home.

BP awarded only three stations fitting Howard's geographical preference while Howard's application was pending; two to white applicants and one to an Asian applicant. BP claims it awarded one station to Bruce Pforisch based on his prior relationship with BP. BP also awarded Pforisch a station outside of Howard's preferred area. Pforisch, a white man, had been a BP Administrative Product Manager for nearly ten years.

BP awarded another station to Max Kianian, an Asian, who had a prior relationship with BP as an owner of another station. Carol Martin, BP's district manager in Atlanta testified that she had recommended against awarding another station to Kianian because she felt he did a poor job in his first station. However, Martin stated that she granted the station to Kianian because her superior, Pete Riley, instructed her to do so. Subsequent to Martin's deposition, and in support of the Reply memorandum on the Motion for Summary Judgment, Martin signed an affidavit stating that in 1991, Max Kianian received official recognition as one of BP's outstanding dealers in the United States.

BP granted the third station to two white men, Bart Dean and Mike Robertson. They received a station because Dean's father and Robertson's uncle were successful BP dealers. Both men had some experience working in their relatives' stations.

During the pendency of Howard's application, BP placed other dealers in stations not located in Howard's preferred geographical area. BP granted one such station to a corporation owned by Mary Bailey and her husband, Robert, both of whom are white. Mary Bailey never operated a station but, she assisted Robert in operating the station he owned. Robert Bailey is a consultant to BP dealers in the operation of their stations.

BP agreed to allow Delmar Rice to purchase I.C. Gordon's dealership. I.C. Gordon, a black man, recommended Rice who is a white nurse anesthesiologist with past supervisory experience. However, Rice had no prior experience in the petroleum industry. Rice enlisted a family friend with petroleum experience to operate the station.

Howard cites the following as evidence supporting his discrimination claim: BP awarded the three stations fulfilling Howard's preferences to white and Asian applicants; BP's lack of written criteria for awarding stations would enable BP to conceal its discriminatory intent by proposing individualized *post hoc* explanations for each dealership award; BP departed from its generalized dealer selection criteria; apparently inconsistent statements made by BP's agents; and Howard's claim that the recipients of stations were all less qualified than he

or were completely unqualified. Howard presented no direct evidence of discriminatory intent on the part of BP officials.

■ Howard also argued before the trial court that the fact that BP has no black dealers in the predominantly white areas of north Atlanta is statistical evidence of discriminatory intent. We agree with the trial court that for this fact to be relevant, plaintiff would have had to present evidence as to how many blacks applied and were rejected and evidence of the success rate of equally qualified white applicants. Anecdotal information is no substitute for meaningful statistical analysis.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law. The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

■ The facts relied on by the movant must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues

exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993), *citing Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

A. *Burden Shifting Under McDonnell Douglas and its Progeny*

■ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) the Supreme Court established a framework for the allocation of the burden of production and an order for the presentation of proof in cases dealing with discriminatory treatment in employment.[2] BP does not challenge the trial court's finding that Howard satisfied the minimal requirements of the *prima facie* case, creating a presumption of racial discrimination: (1) Plaintiff is black, (2) he is qualified to own and operate a BP station, (3) BP rejected his application for a dealership, and (4) the dealerships were given to non-blacks. *See Id.* at 802, 93 S.Ct. at 1824. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (*quoting* 1D. Louisell & C. Mueller, Federal Evidence § 67 p. 536 (1977)).

■ Once the *prima facie* case establishes the presumption of intentional racial discrimination, the defendant may rebut the presumption by articulating a legitimate, non-discriminatory reason for its decision. *See Id.* The defendant's burden, like Plaintiff's *prima facie* burden, is easily fulfilled.

Defendant can easily rebut this presumption, however, by articulating some legitimate reason for its actions. Once defendant states a legitimate reason, plaintiff

---

2. *McDonnell Douglas* was a Title VII discriminatory treatment case. However, this framework also applies to claims brought under 42 U.S.C. § 1981, which requires the plaintiff to prove in-

tentional discrimination. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

must show that defendant's articulated reason is merely a pretext and that defendant's true reason for discharging plaintiff was discrimination.

*Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528–29 (11th Cir.1987).

■ BP claims it awarded the two stations to Bruce Pforisch based on his ten years experience with BP. BP also notes that Pforisch's station was a full service station, the type of station in which Howard expressed no interest. BP says it granted Kianian a station because he received an award for being an outstanding BP dealer at his other station. BP chose Dean, Robertson and Mary Bailey because their relatives were successful BP dealers. BP also notes that it awarded a station to I.C. Gordon's son, Fernando, on that same basis. Fernando Gordon is black. BP granted a station to Delmar Rice because he was recommended by I.C. Gordon. Defendant's articulation of these reasons defeats the presumption of intentional racial discrimination.

■ At this point, plaintiff may demonstrate "through presentation of his own case and through cross examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision' and that race was." *St. Mary's,* — U.S. at —, 113 S.Ct. at 2747 (*quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). *St. Mary's* held that to prevail at trial, a plaintiff must do more than merely prove the articulated reasons false. The plaintiff must also prove that the real reason for the employer's decision was intentional racial discrimination. *Id.* at —, 113 S.Ct. at 2752. However, to withstand summary judgment, a plaintiff need only demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination.

**B. Quantum of Evidence Necessary to Rebut Defendant's Articulated Reason for Awarding Stations to Other Applicants**

*St. Mary's* was an appeal of a bench trial in which the district judge entered judgment for the defendant notwithstanding its finding that the stated reasons for the adverse employment decision were false. *See Id.* at —, 113 S.Ct. at 2748. The Supreme Court found that such a conclusion was possible because a finding that the employer lied as to the reasons for its decision does not restore the presumption that the real reason was racial discrimination. Nonetheless the Court added the following dicta:

[t]he fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.... "[n]o additional proof of discrimination is *required.*"

*Id.* at —, 113 S.Ct. at 2749 (emphasis in original) (quoting *Hicks v. St. Mary's Honor Society,* 970 F.2d 487, 493 (8th Cir.1992)).

*St. Mary's* holds that *proof* that a defendant's articulated reasons are false is not *proof* of intentional discrimination; it is merely *evidence* of intentional discrimination. However, *evidence* of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

In *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993), we held: "Evidence already introduced to establish the prima facie case may be considered, and 'indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation' and establish pretext." *Id., quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10. Contrary to Plaintiff's assertion at oral argument, our holding in *Brown v. American Honda Motor Co., Inc.,* 989 F.2d 946 (11th Cir.1991), upon which the district court relied so heavily, is still good law. In *Brown,* we upheld the principle that "to withstand a defendant's motion for summary judgment, a plaintiff had to do more than

establish a prima facie case and deny the credibility of defendant's witnesses." *Id.* at 950.

The difference between *Hairston* and *Brown* is the difference between evidence sufficient to overcome summary judgment and that which is insufficient. In *Brown* the court upheld summary judgment, holding that Honda's evidence supporting its articulated reason was extremely compelling and the plaintiff failed to produce sufficient evidence to allow a reasonable jury to find defendant's articulated reasons were false. We concluded, "[a]lthough the plaintiff has produced scattered pieces of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine [defendant's] nondiscriminatory rationale." At p. 954. Beyond establishing his *prima facie* case, the *Brown* plaintiff merely denied the credibility of the defendant's witnesses. Accordingly, summary judgment was proper in *Brown* notwithstanding the finding that the plaintiff established a *prima facie* case.

*Hairston* and *Burdine* hold that the identification of inconsistencies in the defendant's testimony is evidence of pretext. Thus, the identification of a defendant's inconsistent statements has evidentiary value; mere denial of credibility has none. Under *St. Mary's*, a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. Such evidence may consist of a defendant's inconsistent statements.

We emphasize that *St. Mary's* does not in any way alter the summary judgment burdens articulated in *Celotex*. In *Celotex* the Court held that when "the non-moving party will bear the burden of proof at trial on a dispositive issue," as Howard will with respect to the issue of intentional discrimination, "Rule 56(e) . . . requires the non-moving party to go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." 477 U.S. at 324, 106 S.Ct. at 2553. *St. Mary's* merely indicates that evidence from which a jury could find that the articulated reasons are false is

enough to create a genuine issue for trial. ——— U.S. at ———, 113 S.Ct. at 2749.

**C.** *Evidence that BP's Articulated Reasons for Denying Howard a Dealership are False*

 Howard argues that he presented evidence that BP's articulated reasons for choosing other applicants is false. The evidence consists of alleged inconsistencies in BP's testimony as to the qualifications of those awarded stations and as to the extent to which BP had a policy of awarding stations to relatives of current owners. Howard claims this evidence, viewed in the context of unwritten criteria for the award of dealerships and individualized rationale for individual decisions, articulated only after the fact, is enough to bring the case before the jury. We agree.

**1.** *Shifting Criteria*

 BP has no written criteria for the selection of dealers. It merely seeks individuals with managerial, business and interpersonal skills and prefers people with prior experience in the petroleum industry. BP admits Howard meets every requirement. BP has different explanations for each station: some were given to people who already owned BP dealerships; some were given to relatives of BP dealers; one was awarded based on the recommendation of the prior owner of the station. We view these subjective and *ad hoc* criteria with greater scrutiny than we would if BP strictly followed written criteria. *See Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir.1984). But, that does not change the fact that Howard must introduce evidence of discrimination. "A contract may be granted 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it [ ] is not for a discriminatory reason.' " *Brown*, 939 F.2d at 951, *quoting Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).

**2.** *Nepotism*

 The most significant alleged inconsistency in BP's explanations of its dealership assignment decisions arises with regard to

the stations awarded to relatives of current dealers. Nepotism does not violate Title VII *per se* but it may be evidence of intentional discrimination when it works to the detriment of a protected class. *See Holder v. City of Raleigh,* 867 F.2d 823, 825–26 (4th Cir.1989). In the instant case the evidence of disparate impact or equal impact is inconclusive.

BP claims it awarded stations to Bart Dean, Mike Robertson and Mary Bailey because their relatives ran successful stations and these applicants received experience working in their relatives' stations. BP also notes that it awarded a station to Fernando Gordon, a black man, because he had experience working in his father's station. The district court rejected Howard's claim that *ad hoc* contracting decisions, many of which were based on nepotism, discriminatorily impacted blacks. The trial court relied on *Brown,* which held: "It is difficult to hold that a practice which affects applicants of all races in the same manner is actually designed to conceal a racially discriminatory motive." 939 F.2d at 952.

■ While Howard's case is not based on a disparate impact theory, proof of disparate impact would be one form of evidence with which Howard could prove disparate treatment. At oral argument, we directed the parties to file supplemental briefs on the issue of whether the *ad hoc* contracting decisions disparately impacted black applicants. Neither brief contained meaningful statistics. Therefore, there remains no evidence that nepotism was used as a pretext for discrimination.

The fact question that arises with regard to BP's nepotism is not so much whether the employment of nepotistic policies is evidence of discrimination. Rather, the real question is whether BP employed such a policy at all. BP's district manager, James Boulware, testified in his deposition that he was unaware of any BP policy or practice to favor relatives of BP dealers. BP explains Boulware's unfa-

miliarity with this practice, claiming that Boulware was not the ultimate decision-maker. But the fact that Boulware was not ultimately responsible for choosing dealers from among the applicants, does not explain why the district manager, who was intimately involved in recruiting new dealers, was unaware that BP had a policy favoring relatives of existing dealers. This apparent inconsistency, viewed against the backdrop of BP's unwritten, shifting criteria, would enable a reasonable jury to find that BP, in fact, had no policy of favoring relatives of dealers and that BP's explanation for awarding stations to Mary Bailey, Bart Dean and Mike Robertson is false.

### 3. *Kianian's Qualifications*

■ Another alleged inconsistency stems from divergent views as to Max Kianian's qualifications. Carol Martin, a BP district manager stated she did not believe Kianian was qualified to run another station, based on his performance in his first station. Martin, nonetheless, awarded Kianian a station at the direction of her superior, Pete Riley. Regardless of Martin's subjective opinion as to Kianian's qualifications, BP's evidence that Kianian received such recognition and BP's assertion that Riley made the decision remains uncontested.[3] Thus, Howard's bare assertion that Kianian was unqualified does not create any fact question for the jury.

### CONCLUSION

Under *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the fact finder's rejection of defendant's proffered reasons is sufficient circumstantial evidence upon which to base a judgment for the plaintiff. *Id.* at ——, 113 S.Ct. at 2749. The apparent inconsistency in testimony, viewed against the backdrop of BP's lack of written criteria, casts sufficient doubt on BP's explanation for its choice of dealers to create a genuine question of material fact to place before a jury. The evidence

---

**3.** Howard's counsel claimed at oral argument that they never heard of Riley until BP's reply brief in support of its Motion for Summary Judgment, and were therefore precluded from deposing him. We note that Carol Martin discussed Pete Riley's role in her deposition which was taken before the Summary Judgment Motion became ripe. Further, Howard could have moved to re-open discovery when he received Carol Martin's affidavit attached to the reply brief.

is likewise sufficient for a jury to find for BP. We merely hold that factual questions preclude summary judgment for BP.

JUDGMENT REVERSED.