[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10122
Non-Argument Calendar

_____

D.C. Docket No. 7:10-cv-00087-HL

CARL WALTON,

Plaintiff-Appellant,

versus

CIVES CORPORATION,
d.b.a. Cives Steel Company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 26, 2012)

Before HULL, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Carl Walton, a black male, appeals following the entry of summary judgment for his employer Cives Corporation ("Cives"), a steel fabricator. Walton brought a Title VII action alleging racial discrimination in failing to promote him. At the district court, Walton argued that Tim Swymer, a white male co-worker with allegedly fewer qualifications, received a promotion to supervisor over him. On appeal, he argues that the district court improperly acted as fact-finder and employed the wrong legal standards. Walton contends that summary judgment was improper because there was evidence showing that Cives's proffered explanations for the promotion were pretextual. In particular, he contends that (1) there is conflicting evidence in support of Cives's explanations and (2) an internal memo explaining Cives's rationale was fabricated at a later date.

We review de novo a district court's grant of summary judgment. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).

Where, as here, a party seeks to establish discrimination through circumstantial evidence, the claim is evaluated under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under McDonnell Douglas, if a plaintiff makes the requisite showing of a prima facie case, and the employer articulates a legitimate, non-discriminatory reason for its actions, then the plaintiff must offer evidence that the alleged reason was merely a

pretext for illegal discrimination.  Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1347 (11th Cir. 2007).

A plaintiff may not "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."  Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  Disparities in qualifications must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Springer, 509 F.3d at 1349 (quotation omitted and emphasis added).

Here, Walton failed to demonstrate that Cives's legitimate, non-discriminatory reasons for promoting Swymer were pretextual.

Several reasons lead us to this conclusion.  First, Swymer had supervisory experience in the steel industry.  While Walton also had supervisory experience, it had not been in the steel industry.  The evidence indicates that Cives considered only steel industry experience, and was uninterested in non-steel industry

experience (and did not inquire about that with respect to either Walton or Swymer).[1]

Second, several employees testified that Walton, while being a good welder, had a tendency to spend more time away from his work station than he should have. [Dkt. 31 at 50; dkt. 32 at 60.] Walton himself conceded that Superintendent Hicks had told him several times to stop talking and get back to work. [Dkt. 29 at 59.] There was no evidence to suggest that Swymer had to be told to get back to work or to stop talking.

Third, when Hicks asked one of Swymer's supervisors whether he would recommend Swymer for a supervisor position, the answer was yes. [Dkt. 30 at 83-84.] But when Hicks asked one of Walton's supervisors if he would recommend Walton, the answer was no. [Id. at 84] Another supervisor (who is black) similarly stated that Walton was not ready to be a supervisor. [Dkt. 31 at 50.]

Fourth, as for Walton's argument that Swymer received the supervisor position without even applying, we note that Walton himself stated that Cives was known for promoting employees even when they did not formally ask to be considered. [Dkt. 29 at 25.]

---

[1] Thus, the evidence indicates that Cives was not aware of Swymer's prior supervisor experience during incarceration, or the fact of his convictions.

The evidence showed that Cives had a basis for concluding that Walton had certain performance deficiencies and lacked strong leadership qualities. Even construing conflicts in evidence favorably towards Walton, he failed to demonstrate a disparity in qualifications such that no reasonable person could have chosen to promote Swymer over him. See Springer, 509 F.3d at 1349. ("[D]isparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." (quotation marks omitted)).

Walton responds that there is still a triable issue here because there is evidence showing that Hicks fabricated a hand-written letter explaining why he chose Swymer over the three other candidates (including Walton). The supposed evidence of fabrication is that Hicks's letter was dated November 12, but Hicks testified that he had written it before announcing that Swymer had been selected for the promotion—which, according to an intraoffice memo, occurred on November 5.[2]

---

[2]    The promotion memo is dated November 5, but it states that Swymer would not begin his supervisor-in-training position until November 12—which is the same date as Hicks's letter.

5

Walton has not explained why this discrepancy in dates would be enough evidence of pretext that the issue should go to a jury.  In the letter, Hicks merely sets out his thoughts about his own decisions on who should be recommended for a supervisor position.  These are the same explanations that Hicks later gave in his deposition: Walton was not serious enough about his current job to warrant a promotion to supervisor, and Swymer's good attitude and previous experience in the steel industry were factors supporting his promotion.  There can be no argument here that Cives has offered shifting or inconsistent explanations for the promotion decision.  See Howard v. BP Oil Co., 32 F.3d 520, 526 (11th Cir. 1994) (noting that shifting or inconsistent statements about why defendant made a decision may provide evidence of discrimination).

Importantly, as discussed above, there is no evidence showing that Hicks's conclusions in the letter are actually false.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (noting that "the falsity of the employer's explanation" could serve as evidence of pretext).  Also, there is no argument that the letter was an ex post facto attempt to fabricate evidence to shore up Cives's explanation that Walton was unsuitable for the position (e.g., by adding false infractions to Walton's record).

6

In sum, the discrepancy about the date of the letter does not raise a triable issue as to whether Cives's explanations are pretextual.  See Springer, 509 F.3d at 1349.

We note that our concern is not "whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  "The employer may [fail to promote] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).

Having considered the briefs and the record, we affirm the district court's grant of summary judgment to Cives.  See Denney, 247 F.3d at 1187.

AFFIRMED.

7