*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BENJAMIN JAIME,

      Plaintiff-Appellant,

UNPUBLISHED
August 6, 2020

V

VILLAGE OF ST. CHARLES,

      Defendant-Appellee.

No. 349901
Saginaw Circuit Court
LC No. 18-036279-CD

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

In this discrimination action, plaintiff, Benjamin Jaime, appeals as of right an order granting summary disposition in favor of defendant, the Village of St. Charles. On appeal, plaintiff argues that there were issues of material fact that should have precluded the order for summary disposition; namely, defendant's inconsistent reasons for declining to promote plaintiff. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's decision to not hire plaintiff for the position of police chief, and instead to hire John Meehleder. Plaintiff is a Hispanic male with cancer, who has an associate's degree in criminal justice and began working for the department in a part-time position in 2008. Plaintiff was later hired to a full-time position. During plaintiff's tenure as a full-time officer, he was disciplined for several incidents, and at one point, had to sign a last chance agreement. Prior to his employment with defendant, plaintiff's only supervisory experience was over inmates at a prison and operating a car wash. In contrast, Chief Meehleder, a Caucasian, nondisabled male, had worked for several years as a sergeant in the Saginaw City Police Department.

In 2014, plaintiff was diagnosed with cancer. Plaintiff did not request any accommodations, and took eight weeks off work before returning without any restrictions. In November 2015, Matthew Lane became the Village Manager. Shortly after beginning, Lane asked plaintiff how to pronounce his name. Plaintiff explained that it should be pronounced 'xaime,' but that many people incorrectly pronounce it 'dʒeɪmi.' In August 2017, prior to the opening of the

-1-

police chief position, plaintiff discussed his cancer with Lane after the Saginaw County Sheriff announced that he was removing his employees from the St. Charles substation where the St. Charles police department was also housed.

Plaintiff was named Acting Chief in August 2017 and Interim Chief in December 2017. Chief Meehleder, however, was one of Lane's top choices to fill the position of police chief permanently, despite Chief Meehleder's lack of interest in the position. Former Chief Rabideau spoke with Lane and they agreed that plaintiff should not be appointed. Chief Rabideau claimed to have told plaintiff that he was not qualified for the position, but plaintiff claimed that Chief Rabideau merely said that Lane would not hire plaintiff.

Three people were interviewed, including plaintiff. Lane initially stated that every candidate that was interviewed was qualified, but later said that plaintiff was not qualified. While answering one question during his interview, plaintiff stated that a person could lie and have integrity, which prompted concern from multiple members of the Village Council, including one who wrote "Yikes!!" on the evaluation sheet. In another question, a council member intended to ask about body cameras, but instead said, "You want to describe your body with the body police cameras[?]"

Following the three interviews, Lane chose to hire Randall Praski. Plaintiff claims that Lane told him that Praski was chosen because he thought it would be best to hire outside of the department. Lane rescinded the offer after receiving Praski's background check, and subsequently offered the job to the third candidate who was interviewed, Michael Hosking, who declined it. Despite the fact that plaintiff was the only remaining candidate, Lane did not offer him the position. Instead, Lane asked Chief Meehleder to consider accepting the position. Ultimately, Lane hired Chief Meehleder without conducting a formal interview or background check.

Plaintiff filed a complaint against defendant alleging racial and disability discrimination in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., and the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 31.1101 *et seq*. Plaintiff claimed that defendant discriminated against him by refusing to hire him as police chief because he was Hispanic and had cancer.

Defendant filed for a motion for summary disposition under MCR 2.116(C)(10), arguing that summary disposition was warranted because plaintiff failed to provide any admissible evidence of discrimination, apart from the allegations in his pleadings. Further, plaintiff's work history and interview performance made him a poor candidate compared to Chief Meehleder. Plaintiff responded by arguing that Lane's inconsistent statement that all candidates who were interviewed were qualified, yet Lane later stated that plaintiff was not qualified created an issue of fact. Additionally, there was a question of whether any of the rationales provided by Lane actually motivated defendant's decision to not hire plaintiff.

Following a hearing, the trial court granted defendant's motion for summary disposition, concluding that plaintiff failed to establish a prima facie case of disability or race discrimination. The court held that plaintiff failed to meet the fourth element for his prima facie case for race discrimination, and to establish any connection between plaintiff's disability and defendant's decision to hire Chief Meehleder over plaintiff. This appeal follows.

## II. DISCUSSION

On appeal, plaintiff argues that the trial court erred by determining that plaintiff had not satisfied the prima facie case for race and disability discrimination, and that defendant's inconsistent reasons for not hiring plaintiff created an issue of fact. We agree that plaintiff satisfied the prima facie cases for race and disability discrimination, but disagree that defendant's inconsistent reasons created an issue of fact.

This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Burkhardt v Bailey*, 260 Mich App, 636; 680 NW2d 453 (2004). Defendant moved for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120.

### A. PRIMA FACIE CASE OF RACE DISCRIMINATION

Plaintiff argues that the trial court erred by folding the *McDonnell Douglas*[1] burden shifting analysis into plaintiff's prima facie case, and that plaintiff did establish his prima facie case for race discrimination. We agree.

Plaintiff brought suit under MCL 37.2202(1)(a), which states that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment . . . because of race . . . ." There are two ways for a plaintiff to prove the prima facie case of race discrimination. The first is to provide direct evidence of discrimination. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). If, as in this case, there is no direct evidence, the plaintiff must use the *McDonnell Douglas* framework. *Id*. Under this framework, the plaintiff must establish a prima facie case by showing that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Id*. at 463, citing *Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-173; 579 NW2d 906 (1998). If the plaintiff does so, the burden shifts to the defendant who must provide a legitimate, non-discriminatory reason for the adverse decision that was made. *Hazle*, 464 Mich at 463-464. After that, the burden shifts back to the plaintiff to prove that the provided reason was a pretext for discrimination. *Id*. at 464-466.

In *Hazle*, the plaintiff, a black woman, brought suit after being passed over for a promotion in favor of a white woman. *Id*. at 460. She was told during the hiring process, and again at the end of it, that she was qualified for the position that she was seeking, and she was also interviewed

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

for the position. *Id*. at 459-460. The Supreme Court held that the plaintiff met the third element because she was told during the interview process that she was qualified, and she was able to meet the fourth element by presenting evidence that she was passed over in favor of a less qualified white woman. *Id*. at 471-472. The plaintiff had some college credits that were relevant to the position whereas the woman who was hired did not. *Id*. at 472.

Similarly to *Hazle*, plaintiff is a member of a protected race and was passed over for a promotion, so he clearly meets the first two elements of the prima facie case. *Id*. at 467. Also, similarly to *Hazle*, plaintiff met the third element because he was able to provide evidence that he was qualified for the position; specifically, Lane's statement in his deposition that everyone who was interviewed was qualified. *Id*. at 463. Plaintiff also met the fourth element. The *Hazle* Court stated that to prove the fourth element, a plaintiff "must present evidence that the employer's actions, 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " *Id*. at 470-471, quoting *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 253; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

Plaintiff correctly argues that the unique circumstances surrounding the decision to hire Chief Meehleder over plaintiff could lead to such an inference of discrimination, whereas, defendant states that the mere hiring of a white man over a Hispanic man is not enough to create such an inference. Defendant set out a hiring process and when faced with the fact that plaintiff was the only remaining candidate, departed from the process and hired Chief Meehleder, who was not a member of a protected class and had not applied for the position. If otherwise unexplained, this decision, viewed in the light most favorable to plaintiff, could lead to an inference that defendant's decision not to hire plaintiff was based on impermissible factors. Accordingly, plaintiff has proven the prima facie case; however, under the *McDonnell Douglas* burden shifting analysis, this merely means that the burden of production shifts to defendant to provide a legitimate, nondiscriminatory reason for his decision.

## B. PRIMA FACIE CASE OF DISABILITY DISCRIMINATION

Plaintiff argues that the trial court erred by folding the *McDonnell Douglas* burden shifting analysis into plaintiff's prima facie case, and that plaintiff did establish his prima facie case for disability discrimination. We agree.

Plaintiff brought suit under the PWDCRA, which states that an employer shall not "[f]ail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(a). Just as with race discrimination cases, disability discrimination cases follow the *McDonnell Douglas* burden shifting analysis when there is no direct evidence of discrimination. *Peden v City of Detroit*, 470 Mich 195, 205; 680 NW2d 857 (2004).

First, a plaintiff must prove the three elements of the prima facie case: "(1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Id*. at 204. The PWDCRA defines a disability as meeting at least one of the following requirements:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

\* \* \*

(ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

(iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).  [MCL 37.1103(d).]

Cancer can be a disability as long as it substantially limits one or more major life activities. MCL 37.1103(d)(*i*)(A).  It is undisputed that plaintiff had cancer which required him to take eight weeks off of work in 2014.  Therefore, he fulfilled the first element of the prima facie case which required a history of a disability.  Because plaintiff was already working in the position, it is also unlikely that the disability would prevent plaintiff from performing his duties, which means that he fulfilled the second element.  Plaintiff fulfilled the third element of the prima facie case by asserting that defendant failed to promote plaintiff to chief of police because of plaintiff's disability.  MCL 37.1202(1)(a).

Defendant and the trial court both stated that plaintiff had not fulfilled the prima facie case because he was not able to establish the causal relationship between his disability and the adverse employment decision.  This is not necessary for the prima facie case.  Instead, the issue of causation only becomes relevant in the *McDonnell Douglas* analysis.  "Because a prima facie case under the *McDonnell Douglas* test creates a presumption of unlawful discrimination, causation is presumed." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124,134-135; 666 NW2d 186 (2003).  Once the plaintiff has established the prima facie case, the burden shifts to defendant, who "may rebut the presumption of causation by articulating a legitimate, nondiscriminatory reason for the employment decision." *Id*. at 135.  Accordingly, the issue of causation is a presumptive part of the prima facie case.  Thus, the trial court erred by considering the issue of causation within its analysis of plaintiff's prima facie case.

## C.  PRETEXT FOR DISCRIMINATION

Plaintiff argues that defendant's inconsistent reasons created a genuine issue of material fact concerning whether defendant's preferred reasons were pretext for discrimination.  We disagree.

After a plaintiff establishes the prima facie case for discrimination, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment decision. *Hazle*, 464 Mich at 462-466.  The burden then shifts back to the plaintiff to prove that the stated reasons were pretext for discrimination. *Id*.  A plaintiff can establish that a reason is pretext "(1)

-5-

by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Major v Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016). Furthermore, a plaintiff cannot just prove that the employer's reasons were pretext, but must establish that the reasons were pretext for discrimination. *Lytle*, 458 Mich at 176.

Here, defendant provided a variety of reasons for not hiring plaintiff. At one point, Lane told plaintiff that he felt it was best to hire from outside the department. At other times, plaintiff's interview and record with the department were given as reasons. Additionally, in Lane's deposition, he stated that every candidate who was offered an interview was qualified for the position, before later stating that plaintiff was not qualified. Plaintiff claims that the inconsistency combined with other evidence can be used to form an inference that defendant's reasons were pretext for discrimination because it "calls into question the foundation of the employer's rationale or factually contradicts that rationale." This argument is the same as the first way of proving that an argument is pretext.

Plaintiff cites to *Howard v BP Oil Co, Inc*, 32 F3d 520, 526 (CA 11, 1994)[2] for the proposition that inconsistencies in a defendant's testimony is evidence of pretext. In *Howard*, the plaintiff, a black man, applied for a B.P. dealership, and while the company did not have any written criteria for their dealers, the plaintiff met the general requirements that they sought; however, he was unable to get a dealership. *Id*. at 522. Instead, B.P. selected white and Asian candidates. *Id*. The plaintiff was able to provide evidence that B.P.'s reasons were false by showing inconsistencies in the defendant's testimony and shifting criteria. *Id*. at 526. For example, many of the selected candidates had ties to B.P. dealerships and the company said that it had a policy that gave preferential treatment to candidates with such ties; however, the district manager said that he knew of no such policy favoring nepotism. *Id*. at 527. Furthermore, the court stated ad hoc criteria like those used by B.P. were subject to greater scrutiny. *Id*. Ultimately, the court held that "a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id*. at 526. The *Howard* Court also noted:

> [P]roof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation. [*Id*. at 525 (emphasis omitted).]

On its face, the present case seems similar to *Howard*. Lane provided inconsistent reasons for declining to hire plaintiff and went outside the hiring protocol that he established. Also, plaintiff was able to provide some evidence that the reasons given were false; namely that Lane

---

[2] We note that *Howard* is a decision from a federal court, which may be considered for its persuasive value, but is not binding on this Court. *Hill v Warren*, 276 Mich App 299, 314; 740 NW2d 706 (2007).

initially said that it was best to hire from outside the department before hiring Chief Meehleder from within. However, there is still a substantial difference between the two cases: Lane had a legitimate reason for not wanting to hire plaintiff, which was not the case in *Howard*. Plaintiff had a disciplinary record and there is evidence to suggest that it was communicated to plaintiff, before he was even interviewed, that he would not get hired as a result of that record, which suggests that defendant's reasons were consistent. Additionally, it is clear that plaintiff's interview left several members of the council dissatisfied.

Finally, even if *Howard* stands for the proposition that proving that defendant's reasons are false is enough to overcome summary disposition, and if plaintiff has proven that defendant's reasons were actually false, binding caselaw still requires plaintiff to prove that defendant's reasons were not just pretext, but pretext for discrimination, *Hazle* 464 Mich at 465-466, which plaintiff is unable to do. Regarding plaintiff's claim of disability discrimination, plaintiff admits that he has no evidence that members of the Village Council were even aware of his cancer diagnosis. Plaintiff also provides no evidence that Lane refused to hire him as a result of his cancer. Similarly, the only evidence that plaintiff provides for his claim of racial discrimination is that Lane asked him how to pronounce his name, which is often considered polite. While the preferential treatment that Chief Meehleder was given is suspect, it does nothing to prove that plaintiff was not hired for any reason apart from the reasons Lane provided. Lane had sought to hire Chief Meehleder and considered plaintiff unqualified from the outset, and that never changed.

In conclusion, defendant offered legitimate, nondiscriminatory reasons for refusing to hire plaintiff—his disciplinary record and poor interview performance—and plaintiff offered no evidence to prove that these reasons were pretext for discrimination. Thus, the trial court properly granted summary disposition in favor of defendant.

## III. CONCLUSION

Although plaintiff was able to establish the prima facie cases for race and disability discrimination, plaintiff was unable to prove that defendant's proffered reasons for not hiring plaintiff were pretext for discrimination. Thus, the trial court properly granted defendant's motion for summary disposition.

Affirmed.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien